Justice Ginsburg,
with whom Justice Breyer joins,
concurring in part and concurring in the judgment.
I agree with the Court’s holding that Title III of the Americans with Disabilities Act of 1990 covers cruise ships, ante, at 129, and allows them to resist modifications “that would conflict with international legal obligations,” ante, at 187 (plurality opinion). I therefore join Parts I, II-A-1, *143 and II-B-2 of the Court’s opinion. I would give no wider berth, however, to the “internal affairs” clear statement rule in determining Title Ill’s application to respondent’s cruise ships, the Norwegian Sea and Norwegian Star. But see ante, at 137. That rule, as I understand it, derives from, and is moored to, the broader guide that statutes “should not be interpreted to regulate foreign persons or conduct if that regulation would conflict with principles of international law.” Hartford Fire Ins. Co. v. California, 509 U. S. 764, 815 (1993) (Scalia, J., dissenting); see also id., at 816 (describing McCulloch v. Sociedad Nacional de Marineros de Honduras, 372 U. S. 10 (1963), as applying this principle); Murray v. Schooner Charming Betsy, 2 Cranch 64, 118 (1804). Title III is properly read to avoid such conflict, but should not be hemmed in where there is no potential for international discord.[1]
The first of the modern cases to address the application of a domestic statute to a foreign-flag ship in U. S. waters, Benz v. Compania Naviera Hidalgo, S. A., 353 U. S. 138 (1957), did not resort to the tag, “internal affairs” rule, to explain the Court’s decision.[2] Benz held that the Labor Management Relations Act did not reach relations between “a foreign employer and a foreign crew operating under an agreement made abroad under the laws of another nation.” Id., at 142. As we concluded in Benz, before reading our law to “run interference in such a delicate field of international relations,” “where the possibilities of international discord are so evident and retaliative action so certain,” the Court should await Congress’ clearly expressed instruction. Id., at 147.
*144 Six years later, in McCulloch v. Sociedad Nacional de Marineros de Honduras, 372 U. S. 10 (1963), the Court relied on Benz to hold that the National Labor Relations Act does not regulate the representation of alien seamen recruited in Honduras to serve aboard vessels under Honduran flags. Applying our law “to the internal management and affairs” of the vessels in question, we observed, McCulloch, 372 U. S., at 20, would produce a “head-on collision” with the regulatory regime installed under the Honduran labor code, id., at 21. “[S]ueh highly charged international circumstances,” we said, called for adherence to the venerable interpretive guide that “ ‘an act of Congress ought never to be construed to violate the law of nations if any other possible construction remains.’ ” Ibid, (quoting Schooner Charming Betsy, 2 Cranch, at 118). Cf. Longshoremen v. Ariadne Shipping Co., 397 U. S. 195, 200 (1970) (applying U. S. law to foreign ships’ labor relations with longshoreworkers employed at U. S. ports is proper because doing so “would . . . threate[n] no interference in the internal affairs of foreign-flag ships likely to lead to conflict with foreign or international law”).
The noninterference principle underlying the internal affairs clear statement rule is served in this case by the Court’s interpretation of Title Ill’s “readily achievable” provision, 42 U. S. C. § 12182(b)(2)(A)(iv). See ante, at 135-136. Construing this language to allow ships to resist modifications “that would conflict with international legal obligations,” ante, at 137, the plurality ensures that Title III will not provoke “international discord” of the kind Benz and Mc-Culloch sought to avoid. I agree with this interpretation, but would create no larger space for the internal affairs rule.
The plurality, however, suggests that the clear statement rule has a further office: It may block structural modifications prompted by Title III that are “readily achievable”— because they do not conflict with international legal obligations — but nonetheless “interfer[e] with a foreign ship’s *145 internal affairs.” Ante, at 137. I disagree with this conception of the rule. In positing an extended application of the internal affairs rule, the plurality cuts the rule loose from its foundation. As Benz and McCulloch demonstrate, the clear statement rule is an interpretive principle counseling against construction of a statute in a manner productive of international discord. When international relations are not at risk, and there is good reason to apply our own law, asserted internal affairs of a ship should hold no greater sway than asserted management prerogatives of a landlocked enterprise.[3]
As the plurality rightly notes, Title III is a broad remedial statute designed to protect persons with disabilities in a variety of activities and settings. See ante, at 132; § 12101(b). The United States has a strong interest in ensuring that U. S. resident cruise passengers enjoy Title Ill’s protections on both domestic and foreign ships. See § 12101; Brief for United States as Amicus Curiae 10.[4] Once conflicts with international legal obligations are avoided, I see no reason to demand a clearer congressional statement that Title III reaches the vessels in question, ships that regularly sail to and from U. S. ports and derive most of their income from U. S. passengers. In sum, I agree that § 12182(b)(2)(A)(iv), properly read, does not require shipowners to make modifications that would conflict with international legal obligations. But I would attribute to the internal affairs clear statement rule no further limitation on Title Ill’s governance in this case.

 Were a clear statement rule in order, I would agree with the plurality’s application-by-application approach.

 Only in a footnote describing a National Labor Relations Board decision did the Court make a synonymous reference to the “internal economy of a vessel of foreign registry and ownership.” Benz, 353 U. S., at 143, n. 5.

 One could hardly anticipate that, absent conflict with international legal obligations, the application of Title III sought in this case would generate a “storm of diplomatic protest.” Id., at 146 (noting “storm of diplomatic protest” against proposal to apply U. S. law to prohibit advance payments by a foreign vessel to foreign seamen in foreign ports).

 As the Court notes, the ships at issue here “are operated by a company based in the United States, serve predominantly United States residents, and are in most other respects United States-centered ventures.” Ante, at 126. Merchant ships sailing between U. S. and foreign ports would present a different question.